May it please the Court, good morning. Good morning. I'm Marsha Lyons and I represent the appellants, AJ Specialty Inc. individually and his class representatives in connection with this case. This is an appeal of a trial court order which dismissed all of the class claims with prejudice of the various individuals that had filed. These individuals were originally included or these classes of individuals were originally included in a class settlement proposal made in connection with the BP cases and I'm sure the Court is well aware of that so I don't need to go over it. One thing about this case I have a question about is it's brought as a class action, but from what I understood from the briefs, it's composed, the class is composed of all these people that have, I would call, idiosyncratic claims. They're foreign, they have no relation to each other, apparently, or they would have been included in the earlier parts of the settlement. How do you form a class certification with individuals that are composed of so many divergent interests and claims? Well, if Your Honor would look at the original, and that's BP's argument, that these are idiosyncratic claims, which, by the way, would be addressed at a class certification hearing. But I'm just, I'm not, I'm really just asking as a practical question. I mean, how do you answer? All these, all these classes What do they have in common? That's what, what is the commonality of this group you seek to reference? Pretty much the same commonality as the people that were included in the class settlement that was finally Then why were they not, why were they excluded from the class settlement? Because apparently for the interest of expediency, at the last minute, truly on the eve of trial, the plaintiff's steering committee and BP agreed that they would reach a class settlement as to certain people, but they would exclude other major industries. And if Your Honor would take a look at the original class settlement, they included all kinds of groups of people that are truly different in many ways, but all affected by the oil spill. But you, you, so the only thing that these people have in common that you seek to represent as a class are they, they were adversely affected by the oil spill. And that's what the original That's all you need, in your opinion, that's all you need to constitute a class. That, that's what was originally part of the definition. And if you No, but is that what you're saying, though? I'm sorry? Is that what you're saying, is that all of the people, the only thing they have in common is that they were, their claims arise out of the oil spill? The original definition that was in the Can you answer my question? Yes. Okay. The original definition in the complaint was to cover claimants and individuals and entities who suffered property or economic or other costs as a result of the oil spill. And included in that were, as you know, wide ranges of people. And what ended up, excuse me, what ended up happening is at the last minute, just before trial, BP and the Planning and Steering Committee took out certain people, including financial institutions, developers, gamers, real estate developers, government workers, all kinds of other people and their employees that had been affected by the oil spill. But, and, and said that, and the, and the point now is they bring their claims individually and not within a class. Isn't that correct? No. That was never part of the original settlement agreement. They were just, they were just not included in that definition. Because they didn't fit in, in the part of the class. No. That's not true. I mean, if you look at the Why were they excluded, then? I really don't know. I mean, it was some kind of a compromise So you're saying it's an arbitrary decision on the part of the Court that excluded the people that you now seek to represent in this class. It was a compromise that was made between the Plaintiff's Steering Committee and BP at the last minute on the eve of trial in order to get this group, these groups settled. So But immediately after that, this class claim was filed, and it included all these entities that had originally been included in the original complaint filed by the Plaintiff's Steering Committee. The Plaintiff's Steering Committee were excluded because they didn't fit into any of the classifications that, that were part of the class settlements. Well, that's That Go ahead. That, that's not correct, Your Honor, because the, the original definition, and the definition basically included anybody who was affected by the oil spill. And they, they broke them down into groups, and then they took some groups and they just took them out. And this class complaint that was filed almost immediately after the settlement included those groups that had been systematically excluded in terms of that settlement. So you represent Harris? We represent what? You represent gambling companies all along the, all the We represent everybody who was named in that, in that class complaint, which are basically the people that were taken out. Were any of them opt-outs? Some of them were opt-out. Some of them were opt-outs, yes. Are you the only firm that claims to represent these people? Am I the only what? Is your firm the only firm that claims to represent such a class? There were originally numerous firms that were representing this class. But the others all complied with the PTO 60. No. What happened is most of the others appealed the PTO 60 order, and many of them were bought out by BP, and the claims, the named claims representatives were no longer there. And as a result, they were, they were gone. But we still had people that were left as named claims representatives, and so our appeal continued. But, no, there were numerous, there were probably at least four or five firms that were representing people in this, in this class. Okay. So you did, but you didn't, these people did not appeal the settlement on the basis that it excluded them? As far as I know, there was not an appeal of the settlement, but there was simply a filing of the class action on behalf of all the excluded groups, which were, like I said, about the class. So why don't you get, you have seven minutes left, why don't you get to your principal points about why we should vacate the application of PTO 60 to your client? Okay. But what ended up happening is we filed this class claim shortly after the settlement, and named in the class claim all these groups that had been excluded from the settlement. Then there was a stay by the court that went on for basically about six years. It was our class claim, it was about three years, because that was the time frame. But then what happened is in March of 2016, the judge decided that, in his words, he wanted to clean up the rest of the claims. And what he did was he had originally allowed people who had filed – who had a claim to file what he called a short-form joinder or a mass joinder claim. And so people could just file a form and file a claim. And then they had other cases where people had no commonality at all, but they could just file a claim altogether. So he filed this PTO 60, or entered this PTO 60, and he said in this order that anybody who had filed individual lawsuits had to complete a – and I'm quoting from his order – anybody who had filed individual lawsuits had to complete a sworn statement by a certain date, blah, blah, blah. And then any plaintiffs who did not file individual lawsuits, but only filed a short-form joinder or were part of a mass joinder lawsuit, had to file an individual lawsuit and a sworn statement by a certain date. It did not address class actions. The next thing that happens is that the people that were representing the people in the class really had no reason to believe that this order even applied to them. But there was a motion for clarification that was filed by one of the law firms that our firm and our class joined in, which the Court never ruled on. Then the Court basically asked – well, in the order to show cause, which we responded to explaining to the Court that trying to require people that were in a class action to file individual lawsuits would be highly prejudicial because most of the statute of limitations, or if not all, would have run by that time. And if they filed before there was a hearing on certification or certification, that they would lose the effect of the tolling. How do you interpret the language in the judge's order that says and or were part of a complaint with more than one plaintiff? That doesn't implicitly include class actions. That was not the interpretation of most people. Well, that's what the – that's what the quote – that's what the language says. That's what the language says, but it did not address class actions. It did not address class representatives or plaintiff class members. I'm sorry? Isn't that a complaint with more than one plaintiff? It is, but it doesn't – it's addressed. And if you look at the actual order, you see there's highlighting. Plaintiffs who did not file individual lawsuits, i.e., i.e., only filed short-form joinder and or were part of a mass joinder lawsuit. Mass joinder? A mass joinder and a class action are not the same. Yeah, well, that's in common parlance they're not, but nevertheless. I mean, so counsel read the highlighted. They read the bold. They didn't read the fine print. Is that what you're saying? I'm saying that they read what the judge said, which was they did not file a short-form joinder or a mass joinder. They filed the class action. All right. So you didn't move for clarification or anything? No. There was a motion for clarification. Not by your clients. Not by us individually. Your class is appealing. So we filed a joinder in the motion for clarification of that order, which the judge never ruled on. Instead, and we filed it, by the way, before the judge issued an order to show cause, which he did in June, asking for people who had not filed to, you know, file something indicating why they had not. And our people did file a response pointing out the problems of trying to make individuals in a class action try to file individual suits, that they would lose the effect of tolling. The statute of limitations had run. They're not suits so much as claims, are they? I'm sorry? They are not suits so much as they are claims. Is that not? They are. That's they're generally referred to as claims. Yes. But anyway, we pointed that out. And the appellees BP responded by saying they didn't see why there should be any exception for class actions. I mean, that was it. They didn't point to any law or anything. And at the same time that we filed the response to the order to show cause, we also asked that the Court allow some kind of a hearing on class certification so that there could be a determination one way or another so that our people could do something and have the protection of the tolling, if possible, and provide notice for the other putative class members. That was not done. Are you the only class action that was involved in the series of events following March of 2016? I'm not sure if there were others. I have read in other pleadings that there were other class actions, but I don't know what ever happened to those. So your position is the PTO 60 or the court's order of March 2016 did not apply to your clients, right? That was our position. But more importantly, that the Court, by simply dismissing these claims of potentially tens of hundreds of thousands of people, abused its discretion, and this was not a case management action. Okay. Thank you. All right. You have time for rebuttal. Thank you. Okay. Mr. Hicks. Thank you, Your Honor, and may it please the Court. The appellants in this case are 16 plaintiffs who filed a multi-plaintiff complaint in 2013 alleging economic damages from the Deepwater Horizon incident. That multi-plaintiff complaint was pending when Judge Barbier issued PTO 60 in 2016, and as this Court recently held in Barrera and Perez, PTO 60 required all plaintiffs with pending claims to file individual lawsuits, one plaintiff per suit, and it barred plaintiffs from continuing to maintain multi-plaintiff complaints, including class actions. But appellants did not comply with PTO 60. Despite many opportunities to do so, despite many warnings that noncompliance would result in dismissal with prejudice, and despite the fact that hundreds of other plaintiffs who had filed multi-plaintiff complaints readily complied with PTO 60 by filing individual complaints. As such, Judge Barbier acted well within his discretion in dismissing appellants' multi-plaintiff complaint with prejudice for failure to comply with his order. His judgment should be affirmed. This Court's decisions in Barrera and Perez dictate the outcome of this case. Both cases held that PTO 60 was an appropriate case management order because it helped Judge Barbier identify exactly which plaintiffs remained in the case after several massive settlements and exactly what those plaintiffs' claims were, which in turn helped facilitate resolution of those claims and wind down what may be the most complex litigation in history. And both cases held that dismissal with prejudice was an appropriate remedy for not complying with PTO 60. Furthermore, Perez specifically affirmed the dismissal with prejudice of a class action complaint, and it specifically rejected the argument that PTO 60 could not apply to class action complaints. What was true in Barrera and Perez is no less true here. There are no material distinctions between the circumstances in those cases and the circumstances here. Indeed, appellants barely addressed Perez, and they submitted no response to our 28J letter regarding Barrera. Instead, appellants offer an array of unavailing arguments. Most, if not all, of them are foreclosed by Barrera or Perez. Regardless, all of them lack intent. The first issue that I will address is this idea that PTO 60 simply did not apply to class actions. I don't actually read the appellant's brief to be arguing that squarely. It's not really in their questions presented. But regardless, I think that that argument is foreclosed by Perez, which very clearly states that the appellant's sole argument on appeal is that they were entitled to pursue their claims as a class action, notwithstanding the trial court's case management order to the contrary. This court squarely addressed that question, and it squarely rejected it. You even can look at the actual language of PTO 60 itself, as Your Honors were doing, where it says in multiple places, plaintiffs who, quote, were part of a complaint with one per plaintiff. So I think it's pretty clear just both from this Court's holdings and also from the face of PTO 60 that it applies to class actions. But I think it's also underscored by the fact that, as appellants concede, they joined this motion for reconsideration of PTO 60 that another firm filed. That motion for reconsideration takes as a premise that PTO 60 applies to class action, class action complaints. It's at Record 13335. And that motion for reconsideration is not arguing that PTO 60 doesn't apply to class actions. It's saying because it applies to class actions, Judge Barbier, you should rethink this order because here are some things that we think are problems with it. Now, you know, even those arguments themselves, I think, lack merit, and they reappear in the appellant's briefs on appeal. But I think the important thing to note is that that whole motion for reconsideration is premised on the very idea that, yes, in fact, PTO 60 does apply to class action complaints. But I think there's another problem with the complaint here, even before you get to that, which is that this is a multi-plaintiff complaint. I mean, there are 16 appellants here who were named plaintiffs on the complaint. And there's certainly no dispute at all that PTO 60 applies to multi-plaintiff complaints. I mean, that was the whole point of PTO 60 was to, you know, after several massive settlements, including the very large B-1 class economic damages settlement. There are 16 named plaintiffs in this class action, you're saying? That is correct. There are the named plaintiffs themselves who claim to be the representatives of the putative class with all of the disparate other parties. There are 16 of them. This law firm apparently has 16 named clients. That's what's on the — that's who are the appellants. Now, there were different named plaintiffs in the actual complaint that's at issue here. And I think one thing that's actually worth noting is that one of those named plaintiffs who was on this multi-plaintiff complaint, in fact, did comply with PTO 60. He submitted a PTO 60-compliant individual suit. This is Lawrence Ritchie, and he's at record 24545. He's listed in the name — in the complaint as a named plaintiff. He's described. And he went ahead and filed a PTO 60-compliant suit. Is the Court enforcing statute of limitations against these people in the last — pursuant to this March order? When it comes to these particular named plaintiffs who claim that they could not have complied because they would have been subject to a statute of limitations, BP has never even tried to assert a statute of limitations because, in BP's view, their claims would relate back and they would not be subject to a statute of limitations. And I think that actually goes to another point, which is that nobody has actually tried to file a complaint after PTO 60. None of these putative class members that the appellants claim to represent, no one has even tried to file a suit. And I think that's because those class members that they claim to represent, the banks, the gaming companies, you know, the insurers, you know, all of these disparate entities that were excluded from the settlement for very good reasons, filed their own individual complaints shortly after the settlement because they had been excluded. And, you know, and those claims have gone through the process. They have gone through sometimes to a settlement process. They have gone — Are they within that claim settlement procedure, though? I believe they are — well, they're not part of the claim settlement procedure that was set up by the economic — the large economic settlement in 2012. But they — there's a separate mechanism set up. There's a neutral process set up for — A separate one. Well, I — no, there's — there have been many different mechanisms set up to deal with resolving all of the claims. I'm surprised there are any plaintiff lawyers left. They're all neutrals, or everybody's a neutral somehow. Well, it is true, Judge Jones, that we are very close to winding down this — That's what I was told last month. Well, it's — you know, it's going along, and, you know, and there continue to be — you know, we're getting there. And, you know, I think that that's why this Court has held in both Barrera and Perez that when it comes to case management orders like PTO 60, Judge Barbier has discretion. Indeed, Barrera said there's special deference given to MDL courts in issuing these types of case management orders and in enforcing them with dismissal with prejudice if they are not complied with. You know, and I think that's, you know, in some ways one of the principal ways of keeping the trains running on time in such a massive MDL. And, again, I don't — you know, I don't see that there's any material distinctions between this case and Perez. The one distinction that the appellants have pointed out is that — well, there's two distinctions. The first is that they point to the sort of forfeiture argument, but as we explain in our brief, that was actually not the holding of the court in Perez. That was a footnote. It actually did address the merits about the class actions. But then the one distinction they do point to is that in this case, the class action complaint was filed before PTO 60, whereas in Perez it was filed after PTO 60. But there's nothing in Perez that — That is, of course, an unpublished opinion. I suppose we should — what your position would be is that we put in published form what Perez held. Well, you — we'd be happy if you did it in unpublished form, too. But I think that you can certainly look to Perez, which is — you know, albeit unpublished, still has persuasive value, particularly when it's less than a year old. It involves this exact same MDL, this exact same case management order that was cited with approval in Barrera, which is a published opinion, 907 Fed 3rd 232. So I think it has certainly all the trappings of a persuasive opinion that, you know, that would be applied here. And if you want to make it published, you can, but you could do exactly what you did in Perez and render it unpublished as well. But I think that there really isn't any material distinction whatsoever between Perez and this case. And I think when you overlay Barrera on top of that, which is a published decision, I think it's very hard to come up with, you know, any theory that sort of gets you around that and doesn't have PTO 60 applying to this multi-plaintiff complaint. Okay. If there are no further questions — I don't think so. Thank you. Thank you, Your Honor. What do you say about Perez? I say that Perez is completely and totally different than this case. And why is that? And in the Perez — well, first of all, in our case, the class action was filed shortly after the original settlement agreement. In the Perez case, Perez had not filed any class actions. Perez was a cooperative group of Mexican fishermen, and at the time that the PTO 60 order was entered, they were not a member of any class action. They were members of mass jointer actions. They didn't have a class action pending. They then filed four separate class actions without seeking permission from the court after PTO 60 was entered. They also represented to the trial court that they would file individual complaints, which they did not do. They sought extensions of time to file individual complaints, which they did not do. And then they appealed based on this class action matter that, as I said, they did not have a class action pending at the time that PTO 60 was entered. Incidentally, there was a question about the tolling matter with regard to the class actions, and BP's counsel takes the position that nobody's ever raised this issue of statute of limitations, et cetera. But I will point out, and I can't find it in my brief, but I know that in my brief I point out that actually in the Perez case, they raise the statute of limitations in the Perez case as a bar to their causes of actions. And the fact is that the United States Supreme Court has said without question on numerous occasions in Crown, Cork, and Seal Company and in American Pipe that a class action complaint tolls the running of a statute of limitations after class certification. But before class certification, there is a division amongst circuits. There is nothing in the Fifth Circuit that would speak to this. But the general feeling and certainly the statements from the Supreme Court is that there is a tolling only after the class certification has been ruled on one way or another. And like I said, contrary to what BP's counsel is representing now in Perez, they said statute of limitations should apply. We're also you also mentioned that there are only 16 named plaintiffs at this point. Well, if you take a look at the original notices of appeal that were filed in connection with this matter, there were probably thousands of named class representatives, all of whom were bought off basically by BP, which is why they ended up with only a few named class representatives. And bought off means they were paid money. So I really don't see what your — and they're not your clients, or even if they are within your class. Well, there's nothing wrong with that, right? There's nothing wrong with that. But I'm saying it's not — to attempt to diminish the size of the class by saying there's only a few people left is really not accurate. Because there are still these people, and these are people representing themselves individually, but also as members of a putative class which has never been determined. So the fact that there are only a few named, and actually, generally speaking, in class cases, there are only a few named, the reason there were so many named individuals in this case was because counsel suspected that this would be the approach that BP would use, would be to try to buy off the class representatives and thus eliminate people to represent the class. But the fact is that there are a number of people that are still named class representatives, and they represent a class of all these various categories of people. They also argued that the motion for reconsideration — This is your last point because your red light is on. Okay. The motion for reconsideration basically conceded that it applied to PTO 60. The fact is it said if it applied, it would have all these dangers, which was basically  Thank you, Your Honors. All right. Thank you very much.